IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RICHARD SHANE ELLIS,**

    **Plaintiff,**

**v.**                    Civil Action No. 2:11cv16
                             (Judge Bailey)

**WARDEN EVELYN SEIFERT,**
**ATTORNEY GENERAL DARRELL MCGRAW. Jr.,**
**COMMISSION JAMES RUBENSTEIN,**
**SUPERVISOR TERESA BLAKE,**
**JENNIFER BUTKUS,**
**MEDICAL DIRECTOR CECELIA JANISZEWSKI,**
**A.W.O. KAREN PSZCOLKOWSKI,**
**LT. EDWARD LITTELL,**
**SUPERVISOR SKIP ADKINS,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this case on February 28, 2011, by filing a civil rights complaint. Shortly thereafter, he was granted permission to proceed as a pauper and assessed the full $350 filing fee, without an initial partial payment. On March 18, 2011, the undersigned conducted a preliminary review of this matter and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was issued, and the Clerk of Court was directed to issue 21 days summonses for the defendants.

On April 18, 2011, Darrell McGraw filed a Motion to Dismiss with supporting Memorandum. On April 18, 2011, as well, Skip Adkins, Teresa Blake, Edward Littell, Karen Pszczolkowski, James Rubenstein, and Evelyn Seifert filed a Motion to Dismiss with supporting memorandum. A Roseboro Notice was issued on April 19, 2011. On April 26, 2011, a Motion to Dismiss or alternative Motion

for Summary Judgment was filed by Jennifer Butkus and Cecelia Janiszewski with a supporting memorandum. A second Roseboro Notice was issued on April 27, 2011. On August 25, 2011, the plaintiff filed his response in opposition to the defendants' motions. In addition, the plaintiff filed a Motion to Dismiss defendants Seifert, Rubenstein, and McGraw. This case is therefore before the undersigned for a Report and Recommendation on the various Motions to Dismiss and Motion for Summary Judgment.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, the plaintiff asserts that on June 3, 2010, while confined to the Northern Correctional Facility ("NCF"), he and three other inmates were loading washing machines. After the machines finished washing, the plaintiff alleges that he and the other inmates were unloading the machines and putting the clothes in the dryer, and then loaded the washers again. After taking a break, the plaintiff claims that he and the other inmates returned to the laundry area to repeat the process. The plaintiff alleges that he was walking to the back washing machines, when he stepped in a puddle of water and soap and fell, hitting his lower back on a ledge. The plaintiff claims that he immediately had severe pain in his lower back going down into his left leg and toes. The supervisor, Teresa Blake, called the medical department. Nurse Jennifer Butkus arrived and asked the plaintiff to get into a wheelchair. The Plaintiff alleges that Nurse Butkus did not examine him and did not provide any support for his back or neck before instructing two correctional officers to pick him up and put him in a wheelchair. The plaintiff alleges that he experienced severe pain going down his left leg into his toes when he was placed in the wheelchair. Upon arriving in the medical department, the plaintiff alleges that he was picked up and put on a gurney still without any neck support. The plaintiff maintains that after he was placed on the gurney, Nurse Butkus just walked off without putting the rails

2

up on the gurney. Thereafter, a nurse practitioner came and examined his back before putting him on a long board which supported his back and neck. Although the nurse practitioner ordered x-rays, the plaintiff alleges that he stayed in the medical department for three days without any x-rays being taken. The plaintiff claims that when the nurse practitioner returned she immediately ordered him taken to the Ohio Valley Medical Center where several x-rays were taken. The x-ray report, which took five days to get to the jail, could not rule out a fractured vertebrae. Therefore, the plaintiff was taken for an MRI. The plaintiff maintains that he has tried to get the report regarding the MRI findings but only "gets the run around." The plaintiff alleges that the doctor at the NCF said that although the vertebrae would heal, he would probably have trouble with the nerve for the rest of his life. The plaintiff also alleges that although he has been on several different medications, nothing completely takes the tingling out of his leg.

The plaintiff alleges that Teresa Blake was knowingly and deliberately indifferent when she put him in an unsafe working condition. The plaintiff maintains that she had been notified about the leaking washing machine, and instead of taking the machine out of service, she chose to put bath towels around the bottom of the machine to catch the soap and water. The plaintiff further alleges that as the laundry supervisor, Ms. Blake is responsible for making sure that all of the equipment is properly maintained. The plaintiff also alleges that the safety officer was not doing his weekly inspection.

For relief, the plaintiff asks that Teresa Blake's assets be frozen until this case is resolved. In addition, he seeks $25,000 for pain and suffering per defendant. He is also seeking $5,000 in mental anguish from each defendant and free medical service for the remainder of his incarceration. Finally, he asks that the monies he spent on prescriptions and nurse and doctor calls be refunded and Teresa Blake not be allowed to serve as a supervisor for any Division of Correction or Regional Jail facility.

**B. Motion to Dismiss by Darrell McGraw**

In his Motion, Attorney General McGraw points out that the plaintiff has simply named him as a defendant and does not mention any claim against him whatsoever in the body of the complaint, and accordingly he must be dismissed as a defendant because no claim of supervisory liability can be made.

**C. Motion to Dismiss by Theresa Blake, Ed Littell, Karen Pszczolkowski, Skip Atkins Evelyn Seifert, and James Rubenstein**

In support of their Motion, the defendants maintain that the plaintiff has failed to state an Eighth Amendment violation, and his complaint must be dismissed. These defendants also allege that they are entitled to qualified immunity for both the Eighth Amendment Claim and ancillary state law negligence claim. Additionally, defendants Seifert, Pszczolkowski and Rubenstein note that the plaintiff fails to mention even their names in the body of the complaint and cannot make a claim of supervisory liability. Additionally, defendant Adkins asserts that there is no allegation anywhere in the complaint that he violated the plaintiff's constitutional rights or was negligent.

**D. Motion to Dismiss and alternative Motion for Summary Judgment by Jennifer Butkus, LPN and Cecelia Janiszewski, RN**

These defendants alleges that the plaintiff's claim neither pleads nor meets the legal threshold for a viable Eighth/Fourteenth Amendment Claim. These defendants also alleges that they are entitled to good faith qualified immunity. Ms. Butkus also alleges that the plaintiff's complaint against her is governed by the provisions of the West Virginia Medical Professional Liability Act, and the plaintiff has failed to comply with the notice of claim and screening certificate of merit required by the West Virginia Code. Finally, these defendants allege that the plaintiff has failed to exhaust his administrative remedies with respect to any claim about medical care he received following his alleged

fall in the NCF laundry.

**E. Plaintiff's Response**

The plaintiff has made no specific response to any motion other than the Motion to Dismiss that includes defendants Adkins and Blake. The plaintiff points to the affidavits submitted by these two defendants as proof that they were both aware that the washing machine in question leaked. Therefore, the plaintiff contends that there is enough evidence to show that "Ed Littell and Ms. Blake new [sic] that there was a risk and danger to the inmates working in the laundry dept,...[T]hey did put me in PHYSICAL harms way, willingly and knowingly was and neglect to protect my ability to have a hazard free work place." (Doc. 44, p.2).

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court

must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

**A. Evelyn Seifert, Karen Pszczolkowski, James Rubenstein, Darrell McGraw**

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a § 1983 case. Rizzo v. Good, 423 U.S. 362 (1976).

In this case, the plaintiff makes no specific allegations against either Evelyn Seifert, Karen Pszczolkowski, James Rubenstein, or Darrell McGraw [1] or assert that they were personally involved in any violation of his constitutional rights. Rather, it appears that the plaintiff merely names them in either their official or supervisory capacities as the Warden of the NCF, the Assistant Warden of Operations, the Commissioner of the Division of Corrections, and the Attorney General of West Virginia. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. *Id.* at 166. In order for the governmental entity

---

[1] Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

to be a proper party of interest, the entity's policy or custom must have played a part in the violation. *Id.* (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights.

As to supervisory capacity, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[2]

---

[2] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

In this instance, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability. Consequently, the plaintiff fails to state a claim against Commissioner Rubenstein, Warden Seifert, or AWO Pszczolkowski and they should be dismissed as defendants in this action. In addition, as the Attorney General, Darrell McGraw is not part of the West Virginia Division of Corrections, and hence can have no supervisory liability. Therefore, he, too, must be dismissed as a defendant.[3]

## B. Teresa Blake, Edward Littell, and Skip Adkins

The plaintiff appears to make two separate claims in this matter. The first concerns the conditions of his confinement, i.e., the slippery floor in the laundry room, which led to his fall. "To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate constitutional protection, and (2) prison officials acted with 'deliberate indifference' to inmate health or safety.'" DeSpain v. Uphoff, 264 F.3d 865, 971 (10th Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)(further quotations omitted).

In order to satisfy the first prong of the Farmer test, the plaintiff must show that the standing-water problem rose to the level of a condition posing a substantial risk of serious harm" to his health or safety. While standing water is a potentially hazardous condition, slippery floors constitute a risk faced by members of the public at large on a daily basis. See Reynolds v. Powell, 370 F.3d 1028 (10th Cir. 2004). Therefore, federal courts from around the country have consistently held that slippery prison floors do not violate the Eighth Amendment. See LeMaire v. Maass, 12 F.3d 1444, 1457 (9th

---

[3] In apparent recognition that he failed to state a claim against either Warden Seifert, Commissioner Rubenstein,, or Attorney General McGraw, the plaintiff filed a Motion to Dismiss these three individuals from this action. (Doc. 45).

Cir. 1993)(noting that "slippery prison floors...do not state even an arguable claim for cruel and unusual punishment")(quotation omitted); Denz v. Clearfield County, 712 F.Supp. 65, 66 (W.D. Pa. 1989)(finding no Eight Amendment violation based on slippery floor in prison cell); Mitchell v. West Virginia, 554 F.Supp. 1215, 1216-17 (N.D.W.Va. 1983)(finding no Eighth Amendment violation based on slippery floor in prison dining hall); Robinson v. Cuyler, 511 F.Supp. 161, 163 (E.D. Pa. 1981)(finding no Eighth Amendment violation based on slippery floor in prison kitchen); Turnstall v. Rowe, 478 F.Supp. 87, 89 (N.D. Ull. 1979)(finding no Eighth Amendment violation based on greasy prison stairway); Snyder v. Blankenship, 473 F. Supp. 1208 (W.D.Va. 1079) (finding no Eighth Amendment violation based on pool of soapy water from leaking dishwasher in prison kitchen), *aff'd*, 618 F.2d 104 (4th Cir. 1980). As this case law establishes, "[a] 'slip and fall," without more, does not amount to cruel and unusual punishment.... Remedy for this type of injury, if any, must be sought in state court under traditional tort law principles." Mitchell, supra at 1217. Nothing in the plaintiff's claims distinguishes it from the typical prison slip and fall, and therefore, the plaintiff is barred from seeking Eighth Amendment liability against these defendants.

**C. Jennifer Butkus, LPN and Cecelia Janiszewski, R.N.**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to*

filing a complaint in federal court. See Porter v. Nussle, 534 U.S. 516, 523 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures.

In Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 126 S.Ct. at 2387 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 2393.

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

In this case, the Court has before it the affidavit of Henry Lowery, who is employed by the Division of Corrections as the Director over the Inmate Central Records Office. In that capacity, Mr. Lowery receives copies of all inmate grievances fully exhausted after they have been appealed to the Commissioner. The plaintiff's central office file indicates that with respect to the incident on June 3, 2010, the plaintiff only grieved the fall, itself, and did not file a grievance with the Commissioner

about the medical care he received thereafter. Thus, the defendants' motion establishes their initial burden under Fed.R.Civ.P 56(c) of demonstrating the absence of a genuine issue of material fact.

Therefore, as previously explained, in order to survive the defendants' motion for summary judgment, the plaintiff must set forth facts showing there is a genuine issue for trial. To carry this burden, the plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita, 475 U.S. at 856 (*citing* DeLuca v. Atlantic Refining Co., 176 F.2d 421, 423 (2nd Cir. 1949)). This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 246. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50.

In this instance, the plaintiff must provide probative evidence to show that he exhausted his administrative remedies on the issue of his medical care. In his complaint, the plaintiff alleges that he presented the facts relating to his complaint in the state prisoner grievance procedure and attaches an Inmate Grievance Form. However that form only address his fall in the laundry room and makes no mention whatsoever of his medical care or defendants Butkus and Janiszewski. (Docs. 1, p. 3 & 1-2). Moreover, in his response to the Motions filed by the defendants, he makes absolutely no mention of filing a grievance regarding his medical care. Clearly, the plaintiff has not carried his burden under Rule 5(c), and the motion for summary judgment filed by defendants Butkus and Janiszewski should be granted with prejudice.[4]

---

[4]Pursuant to DOC Policy Directive 335.00, an inmate must file the initial G-1 Grievance form within fifteen (15) days of any occurrence that would cause him/her to file a grievance. Liberally, construed, the plaintiff complains of medical care beginning on June 3, 2010, and extending through

13

## V. Recommendation

For the reasons stated, the undersigned recommends that the Motion to Dismiss by Darrell McGraw (Doc. 26) be **GRANTED**; the Motion to Dismiss by Skip Adkins, Teresa Blake, Edward Littell, Karen Pszczolkowski, James Rubenstein, Evelyn Seifert, and Skip Adkins (Doc. 28) be **GRANTED**; the Motion for Summary Judgment by Jennifer Butkus and Cecelia Janiszewski (Doc. 32) be **GRANTED**; the Motion to Dismiss by Richard Shane Ellis (Doc. 45) be **DISMISSED AS MOOT**; the plaintiff's Motion to Have the Laundry Department Closed (Doc. 12)[5] be **DENIED**; and the plaintiff's complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

---

the time he signed his complaint on February 7, 2011. Therefore, the plaintiff is well outside the parameters of the Directive and cannot possibly exhaust his administrative remedies regarding his medical care.

[5]The plaintiff requests that this Court order that the laundry facility be closed based on his assertion that the washing machine is still leaking and poses a danger to inmates. The undersigned notes that even if the Court had the authority or inclination to grant this relief, the plaintiff is no longer incarcerated at the NCF, and is not at risk of another fall.

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

**DATED:** September 28, 2011

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE